# NORTHWESTERN M. L. INS. CO. v. MAGDALENA ROTH.

ERROR TO THE COURT OF COMMON PLEAS NO. 2 OF ALLE-
GHENY COUNTY.

Argued November 3, 1887—Decided January 3, 1888.

1. In an action upon an insurance policy which had been previously paid by the insurer to an assignee thereof upon the faith of an assignment and receipt indorsed upon it at the time, the burden is upon the plaintiff to rebut the prima facie defence by evidence that the assignment was fraudulently obtained from the assured, and that before payment the company had notice.

2. To rebut this defence, evidence of the acts and declarations of the company's local agent to solicit insurance, made after the payment upon such assignment and receipt, is inadmissible without evidence that the agent's knowledge was acquired and his acts done as the sub-agent of the company and within the scope of his duties as such.

3. Evidence that a letter was written and mailed to the company, by one who wrote as a stranger and not as having authority, directing the company not to pay, is insufficient to put the company upon notice or inquiry.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ.; absent.

No. 192 October Term 1887, Sup. Ct.; court below, No. 938 November Term 1874, C. P. No. 2.

In the court below suit was brought on October 23, 1874, by Magdalena Roth, administratrix of John Roth, deceased, against the Northwestern Mutual Life Insurance Co., of Milwaukee, to recover upon a policy upon the life of John Roth, for the sum of three thousand dollars.

At a former trial of the same cause on September 26, 1877, a verdict was rendered for the plaintiff for $4,034.47; the judgment thereon, however, was reversed by this court, the case being reported in 87 Pa. 409.

At the second trial on April 11, 1887, the plaintiff offered the policy in evidence, reserving the right to explain and contradict the effect of certain indorsements thereon and to show that they were not binding upon the plaintiff. Written upon

Statement of Facts.

the back of the policy when offered in evidence was an assignment dated February 24, 1871, in the usual form, by John Roth to John Spieler, of all his right, title, interest and claim to its proceeds, with a provision that in case of the death of John Spieler, the assignee, before the policy became payable, then the proceeds should be paid over to the heirs or assigns of John Spieler. There was also indorsed upon the policy when offered in evidence a receipt which read:

Received September 5, 1871, of the Northwestern Mutual Life Insurance Company, three thousand dollars, in full of all claims on the within policy. [Signed]

Attest                                  JOHN SPIELER.

ADAM BECKER.

The plaintiff offered in evidence the testimony of John Spieler, taken on the former trial, for the purpose of showing that John Spieler did not himself know of the assignment to him until after the death of John Roth; that the assignment was without consideration; that there was no delivery made to him of the policy or the assignment; that he had no interest whatever in the policy, and had never received any money from Adam Becker or any one else upon it. The defendant's counsel objected to the testimony, on the ground that the whole, or the greater part of it, was irrelevant.

By the court: Objection overruled.[12]

Under this exception, the witness then testified to the effect substantially; that the signature to the assignment was that of John Roth, and he had seen the policy with the assignment on it in the hands of Adam Becker before Roth's death; that a few days after Roth's death, Becker had come to witness and had him sign the receipt; that he had received from Becker in sums paid at different times between $300 and $400; he did not know whether his name was in the assignment, when he saw it before Roth's death, or not.

Charles Kirsch, a witness for plaintiff, having testified that plaintiff and himself had called on Adam Becker, defendant company's local agent, in June or July, 1871, to inquire about the insurance on her husband's life: Q. Was anything said about anybody else having a claim on the policy? Objected to. Objection overruled.[13]

A. Yes, sir. Q. What was said by Mr. Becker? A. Mr. Becker said that Mr. Roth made his will to the St. Franciscus Hospital, out in Lawrenceville, for a thousand dollars. The witness testified, further, that he had got George Segrist to write a letter to the company about July 29th, "to let us know if the money for Mr. John Roth is paid over to Becker or not; if it aint paid, hold on to it till further notice; answer to Mr. Segrist;" that Segrist had since died. There was no evidence that the letter had been received or replied to by the company.

George H. Gerber, a witness for plaintiff sworn: Plaintiff's counsel proposed to prove that demand was made upon Adam Becker, the agent of defendant, in October, 1871, the day that letters of administration were granted, and that Becker told the plaintiff he had the money in his hands at that time, but was going to retain it and not pay it to any one. Objected to, as incompetent to affect the company defendant. Objection overruled.[14] The witness's testimony sustained the offer.

The plaintiff's counsel offered in evidence a paper, dated April 5, 1887, signed by the widow and all the heirs at law of John Spieler, declaring that said Spieler had died in 1876, and, inter alia, that notwithstanding the indorsed assignment upon the policy they had no claim or interest in said policy. Objected to, as incompetent and irrelevant. Objection overruled and evidence admitted.[15]

The plaintiff, a witness in her own behalf: Q. Tell us what occurred on your visit then the last time you met Mr. Becker there. Objected to. Objection overruled.[16] A. He said he had drawn for himself $2,500, and $500 for Spieler, and there was no court in the world could compel him to pay this money.

Mr. W. D. Moore, a witness for the defendant, having stated that as counsel for the defendant company, he had been furnished by the company's general agent with an order by John Spieler, the assignee of the policy, in favor of Adam Becker, which order he had lost and could not find after diligent search. Defendant's counsel proposed to ask the witness to state the purport of the order. Objected to by plaintiff's counsel until there was proper proof of the execution of the order by John Spieler. Objection sustained.[17]

There was evidence on the part of the defendant to show that an assignment in the form of that. indorsed upon the policy had been transmitted to the company; that the necessary proofs of the death of John Roth were furnished by John Spieler; on June 11, 1871, accompanied by a statement of Adam Becker, the local agent; that Becker was only an agent of the defendant to solicit insurance, and had been appointed by George Dart, the general agent for this state; that on receipt of the proofs of death, the company sent its draft to Dart to pay the policy; that this money was paid to Becker on September 5, 1871, the receipt therefor being as indorsed on the policy, and that the policy, with said indorsements, was then surrendered to the company and produced on the trial on notice from the plaintiff.

The court, MAGEE, J., charged the jury as follows:

Before proceeding to my general charge I will give you the instructions of the court upon the points presented by the counsel in the case. . . . . .

The points presented on the part of the plaintiff are:

1. That the evidence shows that Adam Becker had charge of the defendant's business in this locality, taking and receiving applications for policies, receiving, countersigning and delivering the policies, receiving premiums, taking proofs of loss and making payment of the same; and such being the undisputed facts, Becker's knowledge, if he had it, that Spieler had and claimed no interest in the policy, and that the same was properly payable to Roth's estate, is knowledge of the company defendant, and makes it liable to the Roth estate, unless the execution of the assignment and receipt upon the policy enabled Becker to fraudulently obtain and keep the money from the company, his retention of which is the origin of this suit, and such was not the effect of the assignment and receipt, as it is clearly shown by Dart's testimony, that part of Becker's duty as such agent was to receive the money and "pay it to the party entitled to receive it" in case of loss.

Answer: I cannot assent to this point in all its propositions as stated, and decline therefore to instruct as therein requested.

2. That the uncontradicted evidence shows that Becker

Charge of Court below.

knew all of the facts respecting the policy and its assignment, and the claims of Roth's estate, from the time of the death of Roth; and if, under the evidence, the jury finds that Roth's estate was entitled to be paid the money due upon the policy, and that neither Becker nor the defendant ever paid either Spieler or said estate, then the defendant is liable in this action.

Answer: Affirmed.[1]

3. That if the jury find from the testimony that the company or George Dart, its state agent, received notice given on behalf of plaintiff before the payment of the money to Becker that the plaintiff questioned the validity of any claim by Spieler to the policy, and disregarded it, then the defendant is to be held as paying the money to Becker at its own risk, and cannot set up that it was misled by the assignment on the policy.

Answer: Affirmed, with this qualification: That the notice given was of such a nature as reasonably to put the company on inquiry or to require the company to withhold payment of the policy.

4. If the jury find that Roth did sign the assignment on the policy, but never delivered the same, nor received any consideration therefor, and that Spieler acknowledged that he never had possession of, or any actual interest in, the policy, then the loss was payable to the Roth estate, and is so still.

Answer: Affirmed.[2]

5. That if the jury find that Becker could have received and retained the money as well if the assignment had not been made and the claim of loss had been made out by the plaintiff, then if the assignment was never consummated by delivery or by the receipt of any consideration, and Becker never paid the money on the policy, then the assignment is not to be regarded, so far as Roth and his estate is concerned, as wrongfully aiding Becker to commit the wrong of procuring and appropriating the loss; and if such is the case, the company is fully charged with all knowledge then had by Becker of the loss being payable to Roth's estate.

Answer: Affirmed.[3]

6. The defendant is, under the evidence, chargeable with all the notice and knowledge of the plaintiff's claim which was received by Becker, and their payment to Becker must be considered as made under such notice and knowledge.

Answer: Affirmed.[4]

Defendant's counsel present the following points:

1. That under the pleadings and evidence the verdict should be for the defendant.

Answer: Refused.[5]

2. That if the jury should find that Adam Becker was a party to the alleged fraud, his complicity in and knowledge thereof would not affect the company defendant.

Answer: Refused.[6]

3. That if the jury believe from the evidence that the assignment on the back of the policy was signed by John Roth in blank, and the policy in that condition was left in the hands of Adam Becker, Roth thereby constituted Becker his agent to fill up the assignment; and if Becker did subsequently fill in the name of John Spieler as assignee, and upon this assignment, thus regular on its face, the company acted, believing it to be a valid assignment, both John Roth and the plaintiff are estopped to deny the validity of the assignment.

Answer: Affirmed.

4. If the jury find from the evidence that John Spieler left in the hands of Adam Becker the policy having the assignment filled up and the receipt filled up and signed by Spieler, for the purpose of enabling Becker to receive the money as his agent, he, Spieler, constituted Becker his agent, to receive the insurance money from the company, and payment to Becker in connection with the surrender by him of the receipted policy discharged the company.

Answer: Affirmed, with this caution: that you must be well assured from the evidence that Becker received the money from the company as Spieler's agent or upon his order, and not from the company as its agent to adjust a liability of the company.[7]

5. That if the jury should believe from the evidence that George Segrist wrote and mailed the letter testified to by Charles Kirsch, and that the same was received by the company, said letter was not enough to affect the defendant company with the notice of the alleged fraud, nor was it sufficient to put the company upon inquiry.

Answer: Refused: I leave to you to find from the evidence

whether or not the notice was of such a nature as reasonably to put the company on inquiry, or require it to withhold payment of the money.[8]

6. That there is no sufficient evidence in this case to impeach the assignment by John Roth of the policy in suit.

Answer: Affirmed; that is if I understand the import of the word impeach. There is no sufficient evidence for the court to say as matter of law that the assignment is unworthy of credit, and to be excluded from the consideration of the jury.[9]

7. That under the policy, assignment and death proofs, the defendant company was justified in settling the loss with John Spieler, the assignee, or with his representative, Adam Becker, and if the jury find the insurance money was paid to Adam Becker as his agent, the plaintiff cannot recover.

Answer: Affirmed, with the qualification as stated in answer to defendant's fourth point.[10]

8. That, as it appears from the plaintiff's own evidence that John Roth left the policy in suit, with his signature to the assignment indorsed thereon, in the hands of Adam Becker, and thereby gave him the power to perpetrate the alleged fraud, his personal representative, the plaintiff, is estopped from setting up the alleged fraud against the company in this action.

Answer: Refused. I cannot say that the deposit of the policy with its assignment, with the agent of the company, before payment made, will relieve the company from liability to pay the creditor when the money intended for the creditor has been appropriated by the agent of the company to his own use and not applied to the company indebtedness. The fact, however, that the company has acted on such state of facts is matter to be taken into consideration with other circumstances and facts, as indicative of the true character of the transaction and the relation of the parties to one another.[11]

9. If the jury find from the evidence that the defendant company, through their general agent, George Dart, on September 5, 1871, in good faith, relying on the assignment of the policy in suit made by John Roth, the assured, to John Spieler, on February 24, 1871, and on the proofs of loss furnished the company by said Spieler, and on his surrender of

said policy, with his receipt of satisfaction in full indorsed thereon and signed by him, paid the amount due on said policy to said John Spieler, through Adam Becker, who then and there produced and surrendered to said general agent, Dart, the said policy so assigned and satisfied, then the verdict of the jury should be for the defendant. Nor, if the jury find as above stated, will the alleged statements made by Becker or Spieler, after such payment, avail to deprive the defendants of their right in such case to have the verdict of the jury in their favor.

Answer : Affirmed.

[The court, after referring to the nature of the case, the conditions of the policy, and the assignment and receipt indorsed thereon, proceeded:]

Upon this state of facts, if nothing else appeared, your verdict, necessarily, would be for the defendant company.

The plaintiff does not controvert the genuineness of the signature of John Roth to the assignment, nor that of John Spieler to the receipt. The grounds upon which plaintiff relies to recover in this action is that she is the administratrix of John Roth, deceased, by letters of administration issued to her on October 4, 1871, and as such is entitled to demand and receive any personal property belonging to the estate of John Roth, deceased ; that the amount due upon the policy in suit has never been paid to either the administratrix or to John Spieler, to whom the policy had been assigned ; that the money to pay the policy was committed to the hands of Adam Becker, the agent here of the company, and was by him appropriated to his own use, and that the company is not relieved of liability by such act; that the assignment, though genuine, was not intended to make the money the property of Spieler, but for other purposes than that of ownership, and that, although assigned, it was, notwithstanding, the money of John Roth; that the receipt for the three thousand dollars is a genuine paper, but that it is simply prima facie evidence of payment and the subject of proof that the money was not paid, although the receipt was delivered. It is further contended by the plaintiff that before the payment made, as alleged, to Spieler, the defendants had notice not to pay the money to him, as it

was claimed by the administratrix of John Roth, deceased. I have attempted to state the character of the plaintiff's claim and the ground upon which she relies to secure a verdict. I do not mean to intimate any conclusion of fact therefrom. You will, when you retire to the jury room, be called upon to find under the obligations of your oath the facts for yourselves.

The defendant company has set up the plea of payment, and it is not denied that it has paid out, to some person, on account of this policy the sum of $2,847.36, being the total sum due thereon. The company claims that the money was paid to Spieler, the assignee of the policy, and before any knowledge of the claim of plaintiff was brought to its notice; and further claims that if any money was retained by Becker, the agent of the company at this point, it was so retained by the authority of the assignee, and not from any fault or act of the company or misappropriation by its agent. . . . . .

The counsel have presented points to the court for your instruction, which, perhaps, will cover the law of the case. I may, however, in addition to the points submitted, say that I take it to be the law that there can be no recovery in this action if you find as a fact that the money due upon this policy was paid to John Spieler, the assignee, before notice of a claim thereto by the administratrix of John Roth, or, if paid after notice, the plaintiff has failed in this action to substantiate her right to the money in dispute. [I take it, also, to be the law that if the company placed in the hands of Adam Becker, the local agent for this county, the money to settle this policy and Becker appropriated the fund to his own use, without authority to so appropriate from Spieler, the company will not be discharged from liability.] [18]

If an agent receives money from his principal to pay to another, and without authority of the party entitled to receive the money, retains it for his own use, the loss would fall upon the principal and not upon the party for whom the money was intended. The only way for the principal in such case to avoid liability would be to show clearly and satisfactorily that the agent retained the money for his own use, by and with the authority and consent of the party entitled to secure the

money, and that authority is to be determined by the facts and circumstances surrounding each case.

Reference has been made in the trial of this case to the question of fraud as existing in the transaction. The rule of law is that fraud must be proven and cannot be presumed. You will, therefore, not presume in this case that fraud exists in the absence of proof to that effect. If fraud is once established it affects the rights of all involved in the fraud; and I may say, in addition that, as I understand it, the transactions of the parties have not been assailed on the ground of fraud. The controversy has apparently resolved itself more into the question of the rights of the parties to the fund assigned, rather than an attack upon the validity of the assignment, except in so far as the evidence may show that the assignment is void from want of delivery and like allegations, and the further contention that the company has never made a lawful payment in satisfaction of the policy to either John Spieler or the estate of John Roth. In fact, it seems to me that the assignment cannot be safely attacked by the plaintiff as a fraudulent act, because in that event John Roth would be connected with Becker in the perpetration of a fraud that would defeat the right of the plaintiff to a policy committed in fraud to Becker for purposes of collection of money improperly from the defendant company. . . . . .

The amount due upon the policy, if not paid, is twenty-eight hundred and forty-seven dollars and thirty-six cents, with interest from September 5, 1871, less any payments on account; and I only recall, and when I say anything about the testimony I am not giving it to you as contrary to your own recollection of it; you must take your own recollection for everything of fact; I say I only recall two items as mentioned in the evidence, three or four hundred dollars, admitted by Spieler in his own testimony, and a receipt from him for twelve hundred dollars.

Take the case, gentlemen, and do what in your judgment is right.

The verdict of the jury was $5,512.40. On the hearing of a motion for a new trial it was ordered, that unless the defendant company tendered the plaintiff within twenty days the

sum of $2,605.26, a new trial would be refused ; that if such tender were made and refused by the plaintiff, a new trial would be granted. The defendant refused these terms and, judgment being entered, took this writ assigning for error :

1–4. The answers to the plaintiff's points. [1 to 4]

5–10. The answers to the defendant's points. [5 to 10]

12–16. The admission of the plaintiff's offers. [12 to 16]

17. The refusal of the defendant's offer. [17]

18. The part of the charge embraced in [ ] [18]

*Mr. George Shiras, Jr.* (with him *Mr. W. D. Moore* and *Mr. F. C. McGirr*), for the plaintiff in error :

1. Upon the evidence and the affirmance of defendant's ninth point, the case should have ended with a verdict for the defendant. But in admitting evidence of the statements made by Becker and by Spieler after payment by the company, and by affirming the plaintiff's second prayer, the court erred precisely as in the previous trial reversed in 87 Pa. 413. The assignment and receipt being in evidence, and their authenticity unquestioned, it was error to admit testimony of statements and declarations made by Becker after payment and surrender of the policy. The controversy was not as to matters that led to the making of the contract, in which Becker's knowledge might well be the knowledge of the company, but to matters between the assured and Becker personally. The instructions made the company liable to Roth's administratrix even if it had paid the policy to Becker on the faith of the assignment to Spieler and of Spieler's order to Becker, provided Becker never paid over the money to Spieler. The fraud of Becker and Spieler would not affect the company if the company paid in ignorance of the fraud.

2. The defendant's fifth prayer that if the jury should find that Segrist wrote and mailed the letter testified to by Kirsch and that it was received by the company, it was not enough to affect the company with notice of the alleged fraud, was affirmed on the former trial, but refused on this. How could such letter, not signed by anybody having any apparent connection with the business, and giving no reason why payment should not be made, be notice of anything to the company ? The error was a vital one.

*Mr. M. A. Woodward,* for the defendant in error :

1. From the evidence, there is no possibility of question that Becker was, legally, the general agent of the defendant company at Pittsburgh. Persons assured in companies of a distant state, and largely from among an humble class, cannot reasonably be expected to deal in any respect with the corporation except through its resident agent. When Becker received the money to pay the loss he was still the company's agent. And, having the money in his hands, his principal was bound by his acts, declarations and admissions, as part of the res gestae : 1 Greenl. Ev., § 113; Story Agency, § 451; Insurance Co. v. Woodruff, 2 Dutch. 541; Telegraph Co. v. Dryburg, 35 Pa. 302; Erie City I. Works v. Barber, 106 Pa. 138; McDonald v. Todd, 1 Gr. 17. Becker's knowledge of the fraud was the knowledge of the company; therefore, by no jugglery of Becker with Spieler, nor orders from him, nor payment to him, nor fraud by him upon the plaintiff, or his company, can the plaintiff's rights he affected.

2. But it is asserted that Roth, by his assignment, enabled Becker to deceive the company. The court below could not say that the signing of the assignment, without any consideration and never delivered or accepted, nor known of, till after his death, but kept in the agent's possession and control, so put it in the agent's power as to enable him to defraud the company that the plaintiff's rights were thereby forfeited.

3. The testimony as to the Segrist letter was not to be disregarded. The plaintiff, suspecting a fraud, did all an ignorant woman could be expected to do. After sixteen years, the contents of the letter could not be accurately remembered, but it is a fair presumption that it embodied the substance of Mrs. Roth's claims and that it was received.

4. Spieler's testimony was most relevant. He did not know of the assignment to him till after Roth's death. The assignment was without consideration and there was no delivery. He signed papers generally at Becker's request, including ordinary and judgment notes, upon which he received and owed nothing. The assignment and receipt upon the policy were valueless against the plaintiff.

OPINION, MR. JUSTICE STERRETT :

If proper attention had been given to the opinion of this

court, delivered by the present Chief Justice, when the case was here before: 87 Pa. 409, the learned judge of the Common Pleas would not have fallen into some of the errors now complained of.

In support of her claim, plaintiff gave in evidence the policy of insurance in suit, reserving "the right to explain and contradict the indorsements thereon, and to show that they are not binding upon" her. The indorsements, thus put in evidence with the policy, are: (1) An assignment by John Roth, plaintiff's intestate, of all his "right, title and interest in and to the within policy, No. 58,714," to John Spieler, "for his sole use and benefit." The assignment is declared to be "for a valuable consideration, the receipt whereof is hereby acknowledged," and provides: "In case of the death of said assignee before the policy becomes due, then, and in that case, it shall be payable to the heirs or assigns of John Spieler;" (2) The receipt of John Spieler, September 5, 1871, to the company, plaintiff in error, for "three thousand dollars in full of all claims on the within policy." These indorsements, the genuineness of which was not questioned, in connection with the policy, coming as they did from the possession of the company, and given in evidence by plaintiff herself, were proof of payment upon which the company had a right to rely until the contrary was shown. In other words, the plaintiff's own evidence, at that stage of the case, presented a clear prima facie defence to her claim.

It was clearly shown on the trial that after the death of assured, and due proof thereof by his assignee, John Spieler, the company sent its draft on New York to the order of George Dart, its general agent in this state, residing in the city of Williamsport, for the purpose of paying the risk; and, upon surrender of the policy, with the assignment and receipt above mentioned, indorsed thereon, the money was paid by Dart, and the policy forwarded by him to the company. In view of these and other facts, clearly established by uncontradicted evidence, the court was requested in defendant's third and ninth points to instruct the jury as follows: "3. That if the jury believe from the evidence that the assignment on back of the policy was signed by John Roth in blank, and the policy in that condition was left in the hands of Adam Becker, Roth thereby

constituting Becker his agent to fill up the assignment; and
if Becker did subsequently fill in the name of John Spieler as
assignee, and upon this assignment, thus regular on its face,
the company acted, believing it to be a valid assignment, both
Roth and the plaintiff are estopped to deny the validity of the
assignment." " 9. If the jury find from the evidence that the
defendant company, through their general agent, George Dart,
on September 5, 1871, in good faith, relying on the assignment
of the policy in suit, made by John Roth, the assured, to John
Spieler, and on the proofs of death furnished by said Spieler,
and on his surrender of the policy, with his receipt of satisfac-
tion in full indorsed thereon and signed by him, paid the
amount due on said policy to said John Spieler, through Adam
Becker, who then and there produced and surrendered to said
general agent, Dart, the said policy so assigned and satisfied,
then the verdict of the jury should be for the defendant. Nor,
if the jury find, as above stated, will the alleged statement,
made by Becker or Spieler, after such payment, avail to de-
prive defendants of their right in such case, to have the ver-
dict of the jury in their favor."

Both of these propositions were rightly affirmed without any
qualification, and would have been conclusive of the case if it
had not been for the admission of incompetent evidence and
erroneous instructions to the jury.

In defendant's fourth point the court was requested to
charge : " If the jury find from the evidence that John Spieler
left in the hands of Adam Becker the policy having the assign-
ment filled up, and the receipt filled up and signed by Spieler,
for the purpose of enabling Becker to receive the money as
his agent, he, Spieler, constituted Becker his agent to receive
the insurance money from the company ; and payment to
Becker, in connection with the surrender by him of the re-
ceipted policy, discharged the company." The seventh point
was of similar import, and the answer of the learned judge to
each was : " Affirmed with this caution : that you must be
well assured from the evidence that Becker received the
money from the company as Spieler's agent and upon his
order, and not from the company as its agent, to adjust a lia-
bility of the company." In thus qualifying the answer and
permitting the jury to pass upon a question of fact not war-

ranted by the evidence, the court erred. The seventh and tenth specifications are sustained; and inasmuch as the eighteenth specification contains substantially the same error, it is also sustained.

There was also error in affirming the points recited in the first four specifications and in refusing defendant's second point. The effect of this was to permit the jury to visit upon the company all the consequences of Becker's knowledge respecting the policy and assignment thereof, as well as his alleged fraudulent conduct in connection therewith, without regard to whether such knowledge was acquired or acts done by him as sub-agent of the company, acting within the scope of his duties as such agent, or wholly outside thereof. The declarations and conduct of Becker, as affecting the liability of the company, were considered in the opinion above referred to, and it is unnecessary to repeat what was then said on that subject. The admission of testimony bearing thereon and submission of same to the jury, without evidence tending to connect the company therewith in any manner, were erroneous; and the several specifications relating thereto are sustained.

The eighth and ninth specifications are also sustained. The evidence, relating to the former, if it prove anything, tends to show that Segrist wrote as a stranger and not as one having any authority in the premises; and, even if it were sufficient to warrant the jury in finding that the alleged letter was received by the company, the communication was not of such a character as to put the company on inquiry. It neither contained any statement of fact nor disclosed any reason why the money should not be paid.

As already observed, the assignment and receipt, indorsed on the policy given in evidence by plaintiff below, the genuineness of which is not questioned, were evidence of payment in full by the company to the proper party. The burden was on plaintiff to rebut the prima facie defence thus presented, by proving not only that the assignment was fraudulently procured from the assured, and therefore his personal representative was entitled to demand the insurance money, but also that the company, before paying the money on the faith of the assignment, had notice of that fact. It may be conceded the jury would have been warranted in finding the alleged fraud,

but we fail to discover any evidence to justify a finding that the company had any notice or knowledge of such facts as should have put it on inquiry. In fact, there is no competent evidence to warrant the submission of that question to the jury. The court should, therefore, have ended the controversy by affirming the defendant's first point: "That under the pleadings and evidence the verdict should be for the defendant."

Judgment reversed.