## HOME M. LIFE ASS'N v. R. SEAGER, EXRX.

ERROR TO THE COURT OF COMMON PLEAS OF YORK COUNTY.

Argued May 22, 1889—Decided October 7, 1889.
[To be reported.]

1. When a policy of life insurance is payable within ninety days after the furnishing of proof of death of the insured, the insuring company is not bound to delay payment for the full ninety days, in order to give possible adverse claimants of the money opportunity to make known their claims.

2. In an action by the executrix of the insured upon a life policy, which, without notice of any adverse claim, has previously been paid by the insurer to an assignee having prima facie a regular title, the burden of proof is upon the plaintiff to establish that the policy is still a subsisting obligation, notwithstanding such payment.

3. Whether in such action, the fact that the payment to the assignee was made upon the faith of a regular and formal assignment, in ignorance of any defect in his title and without notice that the money was claimed by the executrix, would be a good defence, if it had appeared in evidence that the assignee had no insurable interest, not decided.

4. A letter to the secretary of the company, from the agent of the holder of the policy, urging prompt payment, and offering indemnity if the company should have trouble about it, but adding, "there is, however, no danger in that respect," has in it no element of notice of an adverse claim, and is inadmissible to affect the company with notice.

5. If an insurance company give to the holder of a matured life policy, in settlement of the amount due thereon, its negotiable note for the amount, taking a receipt in full and a surrender of the policy for cancellation, in considering the effect of a notice of an adverse claim the giving of the note in such circumstances is to be treated as the equivalent of payment.

Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 355 January Term 1889, Sup. Ct.; court below, No. 80 April Term 1886, C. P.

On April 6, 1886, Rosina Seager, executrix of the last will and testament of John Seager, deceased, brought debt against the Home Mutual Life Association of Pennsylvania, upon a policy of insurance on the life of her testator in the sum of $500, issued by the defendant association on April 3, 1879. The defendant's pleas were payment and payment with leave.

At the trial, January 31, 1889, the following facts were shown:

The defendant was an insurance company, incorporated under the act of May 1, 1876, P. L. 53, having its home office at Lebanon, Pa. On March 31, 1879, John Seager made application to it for a policy of $500 upon his own life. On April 3, 1879, the policy applied for was issued to him by the defendant, and thereby it promised, in consideration of the payment by the insured of certain specified annual sums and of mortality assessments according to the charter and by-laws of the association, to pay to John Seager, "his executors, administrators or assigns, the sum of Five Hundred Dollars, at the office of the association, at Lebanon, Pennsylvania, within ninety days after notice and the proofs hereinafter required of the death of said John Seager, of York, York county, Pennsylvania, shall have been furnished and approved at the office of the association," upon certain conditions, some of which were as follows:

"6. The proofs of death by which this contract matures. . . shall include (1) a statement of the extent and character of each and every claimant's interest in the policy. . . . .

"7. This association will not take notice of any assignment of this policy, until a duplicate or a certified copy thereof, shall be delivered to the association at its principal office; and under no circumstances will the association assume any respon-

sibility for the validity of such assignment. If any claim be made under an assignment, proof of interest to the extent of the claim will be required."

John Seager assigned the policy, April 5, 1879, to Lewis Deisinger, who on December 6, 1883, assigned it to Dr. J. R. Spangler, and on September 17, 1885, it was assigned by Spangler to Cassie E. Ness. In each of these assignments the consideration thereof was stated to be one dollar, and they were all attached to the face of the policy. The annual dues and assessments were regularly paid by the respective assignees.

On November 2, 1885, John Seager died. Proofs of his death were made out and sent to the association by Cassie E. Ness, and were received at its office on November 7, 1885. On that day the assessment collecting agent of the defendant, Dr. J. R. Spangler, who had received from Cassie E. Ness a power of attorney authorizing him to collect for her the amount due on the policy, wrote to the secretary of the association as follows :

"Dear Sir: Suppose by this time you received the death proof of John Seager, deceased. I have a power of attorney to collect the claim, and would like to get it in the shape of a note if possible. Most likely the company would not object to doing that, payable in 90 or 120 days. I will further pledge you my word and honor if the company in any way should have trouble about the matter I would be responsible for the same. There is however no danger in that respect. Hoping I may hear from you soon I remain."

Upon receiving an indemnifying bond executed by Cassie E. Ness as principal, and by J. R. Spangler and B. F. Spangler as sureties, the association, on November 17, 1885, gave to Cassie E. Ness, in payment of the amount due on the policy, its negotiable promissory note at 120 days, for $483.44, the face of the policy less certain assessments due and unpaid thereon, and the same day Cassie E. Ness signed a receipt, written upon the back of the policy, acknowledging full payment and satisfaction of the obligation, and surrendered the policy to the association for cancellation. On November 19, 1885, the note so given was sold by the payee to Dr. J. R. Spangler, who afterwards deposited it in bank for collection, and it was paid by the defendant company at maturity.

On November 19, 1885, letters testamentary were issued to

the plaintiff as executrix of John Seager deceased, and two days later Mr. George B. Cole, as her attorney, wrote the following letter, which was received at the office of the defendant association on November 24th:

" To the Officers of the Home Mutual Aid Association:

Gents :—This is to notify you that the proceeds of a certain policy or certificate of insurance issued by your association on the life of John Seager, late of the borough of York, deceased, is hereby claimed and demanded by Rosina Seager, executrix of the last will and testament of said John Seager, deceased.

N. B.—The above is intended as a legal notice.

P. S.—Shall we furnish you with a death proof, or will you waive the formality, as we are informed that one has been furnished to you ? "

The plaintiff offered no testimony as to the absence of an insurable interest in the several assignees of the policy, but in her rebuttal case, she offered in evidence the letter of Dr. J. R. Spangler, dated November 7, 1885, given above, " for the purpose of rebutting the testimony of the defendant tending to show that the payment made to Cassie E. Ness, was a bona fide payment without notice and without knowledge of any defence, and further to show that the real motive and consideration of said payment was the promise of Dr. J. R. Spangler, contained in this letter, and also the bond of indemnity spoken of as security to the company for said payment, and in support of the plaintiff's statement."

Objected to.

By the court: Offer admitted ; exception.[3]

At the conclusion of the testimony the court, GIBSON, P. J., after reviewing the facts in evidence, charged the jury as follows :

The payment of the money was very promptly made. It could not have been more promptly made than was done, taking the note as payment of the policy, and it was for the policy that was then given up.

[You will observe that in the policy it says, upon the life of John Seager, " his executors, administrators and assigns." I have already read to you from the policy what has been said in regard to the assigns, and the law requires that there should

be some kind of interest, either a pecuniary interest, as a creditor, or an interest in the life of a person, that is a near relative, as a son, or husband, father, or something of that kind; a person having an interest in the life of the assured, in order to make such an assignment good, otherwise it comes under the head of what are known as wagering policies; and if, after the death of the party insured, the party who is the assignee, buys the claim and collects the money, a representative of the party insured can bring suit and recover the money back again, make him pay it back again. This case differs from such cases as that, simply in that this is an action by the executrix to recover from the company.] [13]

[It has been contended here that this assignment, as they say, is on its face bona fide, apparently good, and authorizes the payment of this money on this policy to Cassie E. Ness, and that the company was justified in the payment. That leaves the question, however, for you to determine whether it was or was not such an assignment as would excuse the company from paying now to the executrix?] [14] It appears by the evidence that the widow took out letters of administration in that same month of November, 1885, on the 19th day of November; and she, through Mr. Cole, her attorney, sent a notice over to the company on November 21, 1885, and it was received by the company on the 24th. That notice said this: in that you have the proceeds of a certain policy, or certificate of insurance issued by your association on the life of John Seager, that money is claimed and demanded by Rosina Seager, executrix of the last will and testament of John Seager, deceased.

The death proofs, as I have already said, were sent over to this association by this assignee, Cassie E. Ness. But before this notice was sent, on November 17th, which was a week before, a note was given for $483.44, deducting some unpaid dues, and the receipt that I have read to you was given. This note that was given on November 17th, on March 21st following, was paid in cash to the party who held it. I believe it was indorsed to Dr. Spangler, who received the money upon it.

[These constitute all the facts of the case that we have before us, and the fact for you to determine simply is this, whether or not the widow can now recover the amount in her own name,

because there was not a proper assignment of this policy, there being no insurable interest shown in the party who held the assignment, or whether there was anything in the circumstances of the case, attending the notice of death and other circumstances, which prevented it from being a bona fide transaction.] [15] In other words, the simple question is, whether under the terms of this policy of insurance, in order that the widow should give ample notice of her claim, and should have ample time for that purpose, if she gave notice of her claim within ninety days, in which the policy was payable, it was not sufficient notice of her claim as against any other person, as the policy is made payable to John Seager, his executors, administrators or assigns, to say who is the person who has an insurable interest.

It is not necessary to state these facts any further, but simply to read the points that have been submitted by the counsel on either side, and you will determine how you will decide this case accordingly as those points may be affirmed or refused.

The plaintiff requests the court to charge [inter alia] :

1. If the jury find from the evidence that the defendant, after receiving notice of the plaintiff's claim as executrix of John Seager, deceased, to the moneys due on the policy in suit, paid said moneys to Cassie E. Ness, an assignee of said policy, who had no insurable interest in the life of said decedent when she became assignee thereof, then such payment by defendant is not a good or sufficient defence to the plaintiff's claim, and the verdict of the jury must be for the plaintiff.

Answer : I answer that this point is affirmed.[5]

2. If the jury find from the evidence that defendant's note to Cassie E. Ness, for the proceeds of the policy in suit, was still in her hands unpaid at the time when plaintiff notified defendant of her claim to said moneys, said time of notice being within the ninety days allowed defendant for payment of the loss, and if the jury also find that Cassie E. Ness had no insurable interest in the life of John Seager, deceased, at the time when she became assignee of said policy, then the subsequent payment of said note, by defendant, without attempting to stop payment, or making defence thereto, was a voluntary payment at defendant's own risk, and cannot prejudice the plaintiff's right to recover said moneys in this suit

Answer: This point is affirmed.[6]

3. Defendant having ninety days' time within which to pay said policy after death proofs were furnished it, it was the duty of defendant before paying said loss within said time to any one else than the beneficiary, to ascertain whether such other party had an insurable interest in decedent's life, and if defendant paid to a party having no insurable interest within said time, and without notice to the beneficiary or his executrix, it was made at defendant's own risk, and the plaintiff cannot be prejudiced thereby in her right to recover in this suit.

Answer: This point is affirmed.[7]

4. The plaintiff as executrix of John Seager, deceased, was entitled to a reasonable time after the death within which to file notice of her claim to the defendant, which reasonable time in this case, under the terms of the policy, was ninety days after the approval of death proofs; and if the jury find from the evidence that she gave notice of her claim two days after she had taken out letters testamentary, and said notice was received by defendant three days later, such notice was in time and she was not guilty of negligence, in not sending it in sooner; and she cannot be prejudiced in her right to recover by a previous payment to a party having no insurable interest in the life of decedent.

Answer: Affirmed.[8]

The defendant requests the court to charge:

1. That under the policy, assignments, and death proofs, the defendant company was justified in settling the loss with Cassie E. Ness, the assignee of the policy, and as the defendant paid the loss to Cassie E. Ness, before any notice from the plaintiff, the verdict of the jury must be in favor of the defendant.

Answer: I must answer that this point is refused.[9]

2. That under all the evidence in this case, it appears that the defendant company had no notice of the claim of the plaintiff before November 17, 1885, on which day the loss was paid to Cassie E. Ness, the assignee of the policy, and the verdict of the jury must be in favor of the defendant.

Answer: This point is refused.[10]

3. Under the law and the evidence in the case the verdict of the jury must be in favor of the defendant.

Answer: I cannot affirm this point, either.[11]   As in the case of the plaintiff, the facts are for the jury to determine, and if you find for the plaintiff you will say you find for the plaintiff for so many dollars, and if you find for the defendant you will say that you find for the defendant.

The jury rendered a verdict in favor of the plaintiff for $587.44.   Judgment having been entered thereon, the defendant took this writ, assigning inter alia for error:

3. The admission of plaintiff's offer.[3]

5–8. The answers to plaintiff's points.[5 to 8]

9–11. The answers to defendant's points.[9 to 11]

13–15. The portions of the charge embraced in [ ] [13 to 15]

*Mr. E. W. Spangler* and *Mr. H. L. Fisher* (with them *Mr. Grant Weidman*), for the plaintiff in error:

1. The note given to Cassie E. Ness was the same as cash: Seltzer v. Coleman, 32 Pa. 493.   The uncontradicted evidence was that it had been both given to and negotiated by Miss Ness prior to any notice from the plaintiff of a claim against the defendant.   The first and second points of the plaintiff, therefore, contained assumptions of fact contrary to the evidence and should not have been affirmed.

2. It was optional with the association to pay either at any time within or at the end of the ninety days mentioned in the policy.   It was not bound to make inquiry, before payment, whether there was any other legal claimant: Bomberger v. U. B. Aid Society, 18 W. N. 459; N. W. Ins. Co. v. Roth, 118 Pa. 329.   Having received a surrender of the policy and paid the money to the party who on the face of the papers was entitled to receive it, without notice of any adverse claim, the association had a good defence: N. W. Ins. Co. v. Roth, 87 Pa. 409; s. c. 118 Pa. 329.

3. The seventh clause of the conditions of the policy, relative to the approval of assignments and proof of the interest of assignees, was inserted for the benefit of the association and could be waived by it, and no one has a legal right to complain of the waiver thereof: Hoffman v. Hoke, 122 Pa. 385; Bershe v. Ins. Co., 31 Mo. 546.   The receipt of assessments, however, from the assigees was a ratification and approval of the assignments;

Hyatt v. Wait, 37 Barb. 29; Keenan v. Insurance Co., 13 Ia. 375; Peoria Ins. Co. v. Hall, 12 Mich. 202; C. V. Mut. Prot. Co. v. Mitchell, 48 Pa. 374; Ins. Co. v. Slockbower, 26 Pa. 199; Elliott v. Insurance Co., 66 Pa. 22.

*Mr. N. M. Wanner,* (with him *Mr. George B. Cole*), for the defendant in error:

1. On the face of the papers the executrix was clearly entitled to the money due on the policy: York Co. Mut. Aid Ass'n v. Myers, 11 W. N. 541. None of the assignees appear to have had any other than a speculative interest in the life of the insured. Had the defendant required compliance with the conditions of the policy, the want of insurable interest in Miss Ness would have been disclosed. These conditions were an assurance to John Seager and his personal representatives that the money would not be paid to an assignee of the policy, without requiring proof of insurable interest; and the association had no right to disregard or change the conditions without their consent: Insurance Co. v. Connor, 17 Pa. 136; Rosenberger v. Insurance Co., 87 Pa. 207; York Co. Mut. Aid Ass'n v. Myers, 11 W. N. 541.

2. The executrix had a right to rely on the observance of the conditions of the contract without giving any special notice of her claim during the ninety days. The whole of that period was a reasonable time for giving notice. But she in fact gave it within two days after taking out letters testamentary, and it was received by the defendant only seventeen days after the proofs of death. She should not be held guilty of negligence in not giving it sooner than she did. It answered all the requirements laid down in Bomberger v. U. B. Aid Soc., 18 W. N. 459, and N. W. Ins. Co. v. Roth, 118 Pa. 329. Moreover, the defendant had constructive notice of her claim. The face of the policy making it payable to executors and the fact that there were several assignments from one stranger to another, for the nominal consideration of one dollar, were danger signals which it disregarded.

3. Every incident connected with the collection of this policy stamps it as a deliberate scheme to secure the money before the executrix had time to assert her claim; and the undisputed facts clearly show that the association was willing to lend itself to the scheme, as soon as it was fully indemnified. The

Opinion of the Court.

indecent haste of the settlement proclaims the motive, and all the circumstances show that the mis-payment was not a bona fide one, but was made simply on the strength of the bond of indemnity. The court, therefore, was amply justified in not permitting it to protect the defendant. The defendant could have defended against the note in the hands of either the plaintiff or Dr. Spangler, her agent, as he was not a bona fide holder for value without notice.

OPINION, MR. JUSTICE WILLIAMS:

John Seager effected an insurance upon his own life in the Home Mutual Insurance Company of Lebanon, Pa., on April 3, 1879. Two days later he assigned the policy to Deisinger. He held it until December 6, 1883, when he assigned to Spangler, who, on September 17, 1885, assigned to Ness, the holder at the time of Seager's death, on November 2, 1885. Proofs of death were made out by Ness and forwarded to the company, and on November 17, 1885, the loss was paid by a negotiable bill or note, and the policy surrendered and canceled. Seven days later, on November 24th, Mrs. Seager gave notice in writing that she claimed the proceeds of the policy, as executrix of her husband. The company set up the payment to the holder and the surrender and cancellation of the policy, as a discharge of their liability, and this action was then brought.

On the trial, the plaintiff offered a letter written by Dr. Spangler, as agent of Ness, to the secretary of the company, in which he urged an early payment of the loss, and offered to be responsible, "if the company in any way should have trouble about it;" adding, "there is, however, no danger in that respect." Among the purposes of the offer, as stated, was that of showing notice to the company of an adverse claim, and that the payment was not made bona fide. It is very clear that this letter was written for just the opposite purpose, and was intended to persuade the company that payment to Ness could be made with perfect safety. It had no one element of notice of an adverse claim about it. It stated no fact that could excite inquiry, disclosed the name of no one interested adversely to Ness, but expressed the opinion that there was no danger of trouble. This letter was therefore inadmissible for the purpose of affecting the company with notice of any sort. N. W. Ins. Co. v. Roth, 118 Pa. 329.

The policy stated the undertaking of the company to pay the amount insured " within ninety days after notice and the proofs hereinafter required of the death of said John Seager, of York, York county, shall have been furnished and approved at the office of the association." The plaintiff's fourth point requested the court to instruct the jury that the plaintiff in this case was entitled to ninety days after the proofs of death had been furnished by Ness, within which to make known her claim. The court affirmed this point. This was error. The plaintiff had nothing to do with Ness or the proofs submitted by her, but must stand upon her own adverse title. But the promise of the company was to pay "within," not after ninety days. How much within, was a question to be determined by the company in view of its own interests and convenience. The prompt payment of losses is one of the methods by which insurance companies of all sorts recommended themselves to the public. While the company had the right to insist on the full time reserved in the policy, it was not bound to do so, and the fact that it did not, standing by itself, can have no bearing upon the questions raised by the plaintiff.

The defendant's second point asked an instruction to the effect that " under all the evidence it appears that the defendant company had no notice of the claim of the plaintiff before the 17th November, 1885, the day on which the loss was paid to Ness." This was refused. But, save the letter of Dr. Spangler and the security given by him, we find nothing in the evidence to indicate notice of any sort, and as we have already said this letter was inadmissible. There was no notice of the plaintiff's claim until November 24th, one week after payment and surrender of the policy, and the point should have been affirmed, upon the evidence as it is presented to us.

The important question in this case is raised by the defendant's first point, which is as follows : " That under the policy, assignments, and death proofs, the defendant company was justified in settling the loss with Cassie E. Ness, the assignee of the policy, and as the defendant paid the loss to her before any notice from the plaintiff, the verdict must be for the defendant." The court replied, " I must answer that this point is refused." The question here raised is, upon whom is the burden of proof? Ness had a regular title, prima facie, to the

policy. She made the proper proofs of death, and the company without notice of any adverse claim paid her. The plaintiff sues, alleging that Ness had no insurable interest in the life of Seager to support her apparent title, but gives no evidence on that subject. For all that appears in the evidence, Ness may have been a near relative, or a creditor, or both, and obtained her title from a creditor by paying him his debt and taking his security. The prima facies of her title is not attacked by evidence. Until it is, why should it not prevail as a defence to the insurer? If the assignments upon the policy were not valid, as they appeared to be, it was the duty of the plaintiff to show the relation of the assignees to Seager, and to each other. If they had no insurable interest in the life insured, to support their title, it was in the power of the plaintiff to show that fact. She was suing upon a policy that had been paid and canceled. The labor of showing that it was nevertheless subsisting and valid, was on the plaintiff who asserted it. This she failed to do, and we can see no reason why the defendant was not entitled to an affirmative answer to its first point, as the case stood.

The company chose to pay upon the prima facie title of Ness. Whether such payment will protect it if it shall appear that she had no insurable interest in the life of Seager, but was a speculative holder of a wagering policy, is not raised, and we express no opinion upon it. The prima facies of the title of Ness was not attacked on the trial, and payment to her will protect the company until her apparent title is defeated or shown to be bad by competent evidence, and the burden of making the showing is on him who asserts the existence of a defect in the title of his adversary which does not appear upon its face.

The judgment of the court below is reversed for the reasons now given.